**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **X**

BENEFITS EXPRESS, LLC.,

                                Petitioner,

   - against -

REPUBLIC BANK AND TRUST COMPANY,

                               Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **X**

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: 9/20/06

**OPINION AND ORDER**

**06 Civ. 3885 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Benefits Express, LLC ("Benefits Express") moves to confirm the arbitration award (the "Award") issued on March 24, 2006, in a dispute between Benefits Express and Republic Bank and Trust Company ("RBT") arising out of a 2001 fee-splitting agreement and a 2003 asset purchase agreement. RBT objects on the grounds that the motion is premature. RBT also cross-moves for interpleader pursuant to section 1335 of Title 28 of the United States Code. For the following reasons, Benefits Express' petition to confirm the award is granted, and RBT's cross-motion is denied.

-1-

## II.   BACKGROUND

### A.   The 2001 Fee-Splitting Agreement

Benefits Express, a New York company, "operated a business of accepting direct deposit of government benefits and other payments for its customers and providing ready access to deposited funds by checks or debit cards."[1]  RBT is a commercial banking corporation organized under the laws of the state of Kentucky.[2]  On November 23, 1998, the parties entered into a business relationship relating to Benefits Express' direct deposit program (the "1998 Agreement").[3]  That agreement required the parties to arbitrate disputes arising out of the agreement before the American Arbitration Association ("AAA").[4]

On or about November 15, 2001, the two parties entered into a written fee-splitting agreement (the "2001 Agreement") providing for payment of certain percentages of overdraft fees to each party.[5]  Benefits Express claims that the 2001 Agreement increased its share of the overdraft fees from forty-two

---

[1]   Complaint ("Compl."), Ex. A to Petition to Confirm Award ("Pet."), ¶ 8.

[2]   *See* Pet. ¶ 3.

[3]   *See id.* ¶ 8.

[4]   *See id.*

[5]   *See* Compl. ¶ 10.

percent to ninety percent[6] and alleges that RBT breached the 2001 Agreement by failing to pay the revised compensation.[7]  RBT claims that the revised compensation was conditioned on Benefits Express establishing a reserve account with twenty percent of Benefits Express' new share of fees.[8]  RBT claims that Benefit Express' failure to create the reserve account resulted in a waiver of its claim to the revised compensation.[9]

## B.    The 2003 Asset Purchase Agreement

In early 2003, the parties began discussing RBT's acquisition of Benefits Express' business.[10]  The terms of the parties' agreement were memorialized in an unsigned draft asset purchase agreement dated May 9, 2003 (the "2003 Agreement").[11]

The 2003 Agreement provided that RBT would purchase assets owned and employed by Benefits Express in the operation of an electronic funds

---

[6]      *See id.* ¶ 11.

[7]      *See id.* ¶ 12.

[8]      *See* Award of Arbitrator ("Award"), Ex. E to Petition, at 3.

[9]      *See id.*

[10]     *See* Compl. ¶ 18.

[11]     *See id.* ¶ 19.

-3-

transfer program.[12]  The purchase price for the business was set at two hundred thousand dollars, subject to offset by any overdrafts, fees or expenses.[13]  The 2003 Agreement also contained an indemnification provision, which provided that either party shall indemnify the other for all losses incurred as a result of any breach or noncompliance with the agreement and related to any "actions, suits, proceedings, claims, demands, assessments and judgments[.]"[14]

Both parties agree that the 2003 Agreement was never signed.[15] Benefits Express claims that RBT breached the 2003 Agreement by failing to negotiate in good faith and pay fair value for the purchase of Benefits Express' business.[16]

### C.   The Arbitration

On July 10, 2003, Benefits Express sued RBT in this Court.[17]  The complaint alleged breach of the written 2001 fee-splitting agreement and of the

---

[12]    *See* Agreement ("2003 Agreement"), Ex. 1 to Respondent's Objection to Petition to Confirm Arbitration Award ("Objection"), at 1.

[13]    *See id.* at 2.

[14]    *Id.* at 12.

[15]    *See* Compl. ¶ 3; Objection ¶ 1.

[16]    *See* Compl. ¶¶ 3, 22.

[17]    *See id.*

verbal 2003 asset purchase agreement.[18]  However, pursuant to the 1998

Agreement's arbitration clause, the parties agreed to arbitrate their disputes before

the AAA rather than litigate in federal court.[19]  Benefits Express and RBT filed a

Submission to Dispute Resolution in December 2003.[20]

Following discovery, the parties commenced arbitration proceedings

in November of 2005.[21]  After a hearing, the arbitrator issued his decision on

March 24, 2006 (the "Award")[22] finding that RBT had breached the 2001 fee-

splitting agreement by failing to pay Benefits Express ninety percent of overdraft

fees.[23]  The arbitrator rejected RBT's argument that failure to create a reserve fund

with twenty percent of Benefits Express' share of the fees constituted a waiver of

Benefits Express' right to the revised compensation.[24]  The net amount RBT owed

to Benefits Express for breach of the 2001 Agreement was $275,624.[25]  RBT was

---

[18]     *See id.* ¶¶ 2-3.

[19]     *See* Pet. ¶ 9.

[20]     *See id. See also* Submission to Dispute Resolution, Ex. C to Petition.

[21]     *See* Pet. ¶ 11.

[22]     *See id.* ¶¶ 11-12.

[23]     *See* Award at 3.

[24]     *See id.*

[25]     *See id.*

to remit payment within thirty days of the Award.[26]

The arbitrator also found that the parties had reached an agreement for the sale of Benefits Express' business to RBT and that the terms of the agreement in the draft 2003 asset purchase agreement were enforceable.[27]  The arbitrator found that RBT owed Benefits Express $98,690 for the net purchase price for the business.[28]  RBT was to remit payment within thirty days of the Award, together with interest at the rate of nine percent per year, accruing from May 9, 2004.[29]  The arbitrator also ordered RBT to reimburse Benefits Express the sum of $4,250 for administrative fees and expenses Benefits Express incurred in bringing the arbitration and that was in excess of its agreed portion of the costs of arbitration.[30]

On April 14, 2006, RBT filed an application for Motion to Correct Computation Error in Arbitrator's Award.[31]  Benefits Express opposed the motion

---

[26]     *See id.* at 4.

[27]     *See id.* at 1.

[28]     *See id.*

[29]     *See id.* at 4.

[30]     *See id.*

[31]     *See* Pet. ¶ 14.

and cross-moved for additional relief, including attorney's fees and expenses and interest on the award of $275,624.[32]  On May 18, 2006, the arbitrator issued a decision denying both parties' requests.[33]  In denying attorney's fees and expenses, the arbitrator noted that, during a preliminary hearing, the arbitrator had raised the issue of whether any party would seek legal fees and costs and both parties agreed that their claims and counterclaims did not include requests for such relief.[34]  As a result of that hearing, the arbitrator issued an Interim Ruling on June 20, 2005 stating that "[t]he parties have not requested legal fees and costs as part of their respective claims.  Assuming the arbitration provisions do not specify otherwise, the arbitrator shall not have the authority to award legal fees and costs to either party."[35]

On May 22, 2006, after RBT's failure to pay any portion of the money owed to Benefits Express,[36] Benefits Express filed a petition with this Court to confirm the Award pursuant to section 9 of Title 9 of the United States

---

[32]     *See id.*

[33]     *See* Disposition for Application of Modification of Award ("Modification of Award"), Ex. F to Petition, at 1-2.

[34]     *See id.*

[35]     *Id.*

[36]     *See* Pet. ¶ 15; Objection ¶ 5.

Code.[37] On June 22, 2006, RBT filed a Demand for New Arbitration, alleging that

Benefits Express owes RBT $177,376 in costs and attorney's fees relating to

expenses incurred by RBT to compel Benefits Express to perform under the 2003

Agreement.[38] RBT now asserts that this court may not confirm the Award on the

grounds that the arbitration is not final and the petition is premature.[39]

### D.    Third Party Claim

On January 11, 2006, Charles M. Hallinan, a creditor and investor of

Benefits Express, filed a separate action against RBT.[40] That diversity action is

pending before the Honorable Harold Baer of this Court.[41] RBT filed an answer

on June 12, 2006.[42] Hallinan alleges breach of contract, fraud, negligent

misrepresentation, and various other claims associated with money he allegedly

invested in Benefits Express and resulting damage pursuant to the 2001 and 2003

---

[37]    *See* Pet.

[38]    *See* Demand for Arbitration, Ex. 2 to Objection.

[39]    *See* Objection ¶ 16.

[40]    *See* Hallinan Complaint, Ex. 3 to Objection ("Hallinan Compl.").

[41]    *See id.*

[42]    *See* Answer, Ex. D to Reply to Objections to Petition to Confirm Arbitration Award ("Reply").

Agreements.[43]

RBT requests an interpleader proceeding on the grounds that Hallinan has brought a claim for the same alleged injury as Benefits Express and that Hallinan and Benefits Express are adverse claimants to the same funds.[44]  In the alternative, RBT requests that it be allowed to place funds in escrow until Hallinan's competing claim is resolved.[45]

## III.   LEGAL STANDARD

### A.   Confirmation of Arbitration Award

The Federal Arbitration Act ("FAA") states that if "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award."[46]  "'Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive

---

[43]    *See* Hallinan Compl. at 13-18.

[44]    *See* Objection ¶ 23.

[45]    *See id.*

[46]    9 U.S.C. § 9.

litigation.'"[47]  "'The showing required to avoid summary confirmation of an

arbitration award is high.'"[48]  "A court is required to confirm the award unless a

basis for modification or vacatur exists."[49]

In order for an award to be enforceable, it must be final.[50]  An

arbitration award is final where it "resolve[s] all the issues submitted to

arbitration," and "resolve[s] them definitively enough so that the rights and

obligations of the two parties, with respect to the issues submitted, do not stand in

need of further adjudication."[51]

## B.  Interpleader

Federal law allows a party who believes it may be exposed to

---

[47]     *Willemijn Houdstermaatschappij, BV v. Standard Microsystems*, 103
F.3d 9, 12 (2d Cir. 1997) (quoting *Folkways Music Publishers v. Weiss*, 989 F.2d
108, 111 (2d Cir. 1993)).

[48]     *Id.* (quoting *Ottley v Schwartzberg*, 819 F.2d 373, 376 (2d Cir.
1987)).

[49]     *Insurance Co. of N. America v. Ssangyong Engineering & Const.*, No.
02 Civ. 1484, 2002 WL 377538, at *4 (S.D.N.Y. Mar. 11, 2002).

[50]     *See* 9 U.S.C. § 10(a)(4) (providing for rejection of confirmation
"where the arbitrators exceeded their powers, or so imperfectly executed them that
a mutual, *final*, and definite award upon the subject matter was not made.")
(emphasis added).

[51]     *Rocket Jewelry Box v. Noble Gift Packaging*, 157 F.3d 174, 176 (2d
Cir. 1998).

duplicitous liability to interplead.  Courts have construed federal interpleader statutes broadly.[52]  The stakeholder is entitled to bring interpleader proceedings in federal court upon a showing that present or potential adverse claims against a single fund exist.[53]  The purpose of interpleader is to protect the stakeholder from double or multiple liability and from incurring trouble and expense associated with that liability.[54]

An interpleader action is normally conducted in two stages.  During the first stage, the court determines whether the interpleader action is appropriate and the stakeholder is entitled to bring the action.[55]  During the second stage, the court determines the rights of the competing claimants to the fund.[56]  Interpleader is triggered when there is "a real and reasonable fear of double liability or vexatious, conflicting claims."[57]

---

[52]    *See Atlas Corp. v. Marine Ins.*, 155 F.R.D. 454, 461 (S.D.N.Y. 1994).

[53]    *See Fidelity Brokerage Servs. v. Bank of China*, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002).

[54]    *See Sotheby's v. Garcia*, 802 F. Supp. 1058, 1064 (S.D.N.Y. 1992).

[55]    *See Fidelity Brokerage Servs.*, 192 F. Supp. 2d at 177.

[56]    *See id.*

[57]    *Washington Elec. Co-op v. Paterson, Walke, and Pratt*, 985 F.2d 677, 679 (2d Cir. 1993).

-11-

## IV.    Applicable Law

### A.    Federal Arbitration Act

The FAA enumerates specific instances where an award may not be confirmed. The statutory grounds for vacatur listed in the FAA are where the: (1) award was procured by corruption, fraud, or undue means; (2) arbitrators exhibited evident partiality or corruption; (3) arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior that prejudiced the rights of any party; or (4) arbitrators exceeded their powers or so imperfectly executed their powers that a mutual, final, and definite award upon the matter submitted was not made.[58]

Grounds for modifying or correcting an award under the FAA include where: "(a) there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (b) the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or (c) the award is imperfect in matter of form not affecting the merits

---

[58]    *See* 9 U.S.C. § 10(a).

of the controversy."[59]

### B.    28 U.S.C. § 1335

Under section 1335, interpleader is allowed where "(1) [t]wo or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property . . . and if (2) the plaintiff has deposited such money or property or has paid the amount of . . . such instrument or the amount due under such obligation into the registry of the court."[60]  The statute also provides that "[s]uch an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another."[61]

## V.    DISCUSSION

### A.    Arbitration Award Was Final

The basis for RBT's objection to Benefit Express' petition to confirm the arbitration award is that the petition is premature.[62]  RBT argues that the award

---

[59]    *Id.* § 11.

[60]    28 U.S.C. § 1335(a).

[61]    *Id.* § 1335(b).

[62]    *See* Objection ¶ 16.

-13-

is not final since RBT has filed a Demand for New Arbitration ("Demand").[63]

RBT asserts that its reason for making the Demand is that it is entitled to costs and

attorney's fees associated with litigating disputes arising from the 2003

Agreement.[64]

　　　　　RBT's argument is without merit.  At a preliminary hearing, RBT had

an opportunity to assert claims for costs and attorney's fees.  On May 18, 2006,

the arbitrator issued a decision in response to RBT's  Motion to Correct

Computation Error in Arbitrator's Award.[65]  That decision included a denial of

costs and attorney's fees.  The arbitrator noted that at the preliminary hearing, he

had raised the issue of whether the parties would seek legal fees and costs and

both parties agreed that their claims and counterclaims did not include such

requests.[66]

　　　　　The arbitrator then issued an Interim Ruling on June 20, 2005 stating

that "[t]he parties have not requested legal fees and costs as part of their respective

claims.  Assuming the arbitration provisions do not specify otherwise, the

---

[63]　　　*See* Demand for Arbitration.

[64]　　　*See* Objection ¶ 12.

[65]　　　*See* Modification of Award at 1-2.

[66]　　　*See id.*

arbitrator shall not have the authority to award legal fees and costs to either party."[67] Further, the arbitrator stressed that "neither party sought to amend its claim or counterclaim at any time following the preliminary hearing. The arbitrator relied upon each party's representations regarding legal fees and costs in preparing the award, and ruled accordingly."[68]

RBT was granted every opportunity to have a full and fair hearing on this issue and present its case to the arbitrator. RBT chose to participate in the arbitration proceeding solely based on the language of its counterclaim and did not seek to amend that claim to include additional fees.[69] Failing to raise a claim for costs and attorney's fees during the arbitration, when it had an opportunity to do so and explicitly decided against it, RBT may not now claim on that basis alone that the arbitrator's decision is not final.[70]

### B.   RBT Has Failed to Assert Any Other Reason Why Confirmation Would Be Improper

---

[67]   *Id.*

[68]   *Id.* at 2.

[69]   *See Banco De Seguros Del Estado v. Mutual Marine Offices*, No. 02 Civ. 467, 2003 WL 21108318, at *2 (S.D.N.Y. May 14, 2003) (stating that final arbitration award was binding on party because it "chose to participate in the arbitration proceedings solely as to damages but not as to liability").

[70]   *See generally id.* (finding that interim arbitration award was final, for confirmation purposes, even though that order was appealed).

RBT has failed to present any other reason why this Court should deny Benefits Express' petition to confirm the award.  RBT has not alleged bias, misconduct, or abuse of power on the part of the arbitrator.  Nor has it alleged the existence of corruption or fraud in determining the Award.  RBT has also asserted no grounds for modifying or correcting the Award.  Because none of the grounds for refusing confirmation under the FAA are applicable, the arbitrator's award must be confirmed.

## C.    Interpleader Is Not Proper Before This Court

RBT bases its interpleader request on the Hallinan Complaint.  RBT claims that Hallinan, as a principal and creditor of Benefits Express, has alleged the same injury against RBT and seeks the same funds owed to Benefits Express.[71] In the event that RBT's request for interpleader is appropriate, it should be decided in the Hallinan action.  That case is not before this Court.  RBT must submit its request for interpleader to the judge assigned to the Hallinan case. Because the issue of interpleader is not properly before this court, RBT's request for interpleader is denied.  Mindful that the Hallinan case might affect the one now before this Court, RBT is directed to immediately place the funds owed to Benefits Express into the court's registry until such time as RBT's petition for interpleader

---

[71]     *See* Objection ¶ 21.

-16-

is resolved.

## V.    CONCLUSION

For the foregoing reasons, Benefits Express's motion to confirm the

arbitration award is granted and RBT's cross-motion for interpleader is denied.

RBT is directed to place the funds owed to Benefits Express into the court's

registry until such time as RBT's request for interpleader is resolved.  The Clerk of

the Court is directed to close these motions (Nos. 1 and 9 on the docket ) and this

case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              September 20, 2006

-17-

## -Appearances-

### Counsel for Petitioner:

David Feureisen, Esq.
BARTELS & FEUREISEN L.L.P.
925 Westchester Avenue, Suite 304
White Plains, New York 10604
(914) 681-7175

### Counsel for Respondent:

Craig A. Stewart, Esq.
Kerry A. Dziubek, Esq.
ARNOLD & PORTER L.L.P.
399 Park Avenue
New York, New York 10022
(212) 715-1000

Glenn Cohen, Esq.
SEILLER WATERMAN L.L.C.
Meidinger Tower, 22nd Floor
462 S. Fourth Street
Louisville, Kentucky 40202
(502) 584-7400